MICHAEL D. RYAN, APPELLEE, V. PATRICK DONLEY, IM-PLEADED WITH LINEUS T. MARTIN ET AL., APPELLANTS.*

FILED JULY 3, 1903.  No. 10,398.

1. Appeal: STIPULATION: WAIVER. A stipulation in an action pending in the district court, that the property which is the subject of the controversy shall be sold and the proceeds deposited with the clerk, until it shall be determined which party to the action is entitled to them, and that, if the sale shall be made before the matter shall be fully litigated, the funds shall be paid out when the court shall have made an order that one or the other party is entitled to them, is not effectual as a release of errors and a waiver of the right of review in this court. An intent by the parties to bar themselves from the right of access to the courts must be manifested by express words or by the strongest implication.

2. Foreclosure: INJUNCTION. The pendency of an action for the foreclosure of an alleged chattel mortgage, in which a temporary injunction has been granted restraining the defendant from selling, consuming or disposing of the property in controversy during the pendency of the action, withdraws the property from pursuit, by general creditors of the alleged mortgagor, in another court by means of the ordinary procedure of a suit at law, judgment

---

* Rehearing of case reported in 2 Neb. (Unof.) 6.

and execution. In such case the property is in the constructive custody of the law.

3. **Covenant in Lease for Mortgage:** ENFORCEMENT. A covenant in an unrecorded lease for the term of five years at an annual rental payable annually, to the effect that the lessee shall on the 15th day of June in each year execute to the lessor a chattel mortgage on the growing crops, to secure the payment of the rent for that year, will be specifically enforced against the lessee and those claiming title to the crops, acquired after the commencement of the suit to establish the lien of the landlord and to sell the property as upon foreclosure.

APPEAL from the district court for Saunders county: SAMUEL H. SEDGWICK, DISTRICT JUDGE. *Affirmed.*

*Lionel C. Burr, Charles L. Burr* and *Victor L. Hawthorne,* for appellants.

*John H. Barry, contra.*

DUFFIE, C.

In 1889, the plaintiff and appellee, Ryan, being the owner of a farm in Saunders county, executed a lease thereof to one Patrick Donley for the term of five years beginning on the first day of March, 1896, reserving an annual rent of $440 payable on the first day of January. It was covenanted in the lease that if the average yield of crops of all kinds in any one year should be less than twenty bushels to the acre, the lessor should accept one-half of the same in lieu of the cash rent reserved for that year, but that the lessee should "execute a promissory note of $440 on June 15 of each year during the term of the lease for the payment of the rent for such year, said note to be secured by chattel mortgage on all the crops to be raised on said premises for such year."

Donley went into possession under the lease, which was not filed for record, but in 1897 refused to execute the note and mortgage provided for in the above recited covenant, and on the 31st day of July in that year Ryan begun this action, alleging the breach of the covenant, and the in-

solvency of Donley, and that the latter was threatening and about to sell, dispose of and consume the growing crops, and by so doing defeat the plaintiff of his rent for that year, and that the average yield of the crops for that year would exceed twenty bushels an acre. The petition prayed for an injunction restraining the defendant from selling, incumbering or consuming the crops, or any of them, and that the plaintiff be decreed to have a mortgage on the same for the sum of $440 as of date June 15, 1897; that the mortgage be foreclosed, the property sold thereunder and the proceeds of such sale, or so much thereof as should be necessary, applied to the satisfaction of said alleged indebtedness and costs of suit. A temporary injunction was allowed as prayed, and the order therefor filed with the papers in the case, but no service thereof or of the summons is disclosed by the transcript, and it does not appear therefrom when actual knowledge thereof first came to the defendant or to the subsequent parties to the case. On the 13th day of December, Donley confessed a judgment in the county court in favor of the appellant, Lehr, for the sum of $381.30 and costs of suit, and on the same day an execution thereon was issued to the appellant, Martin, as constable, and by him levied on a quantity of grain raised on the premises in that year, and claimed to be subject to the alleged lien of the plaintiff's lease. On the 16th day of December the plaintiff filed a supplemental petition joining Lehr and Martin with Donley as defendants thereto, and setting forth the judgment, execution and levy; alleging that all of such proceedings were had, with knowledge by all the parties thereto of the pendency of the plaintiff's action and of the injunction therein, and in contempt thereof, and of the court, and were void, and praying an additional injunction restraining Lehr and Martin from selling or removing the property, or any of it, under the levy. An additional temporary injunction was granted as prayed. A motion to dissolve this latter temporary injunction was made by Lehr and Martin, and overruled. Then they filed a general demurrer to the sup-

43

plemental petition which was also overruled; whereupon they filed an answer thereto admitting the judgment, execution and levy, and the existence of the lease, and denying every other allegation therein contained. The plaintiff filed a reply, but it contained no new matter calling for consideration by the court. Donley entered an appearance, but did not answer either of the plaintiff's pleadings or otherwise participate in the defense. On the 11th day of January, 1898, the plaintiff and Lehr made a stipulation to the effect that the latter should haul the grain to market and sell it, and receive a certain compensation from the proceeds for his service in so doing, and that the residue of such proceeds should be "deposited with the clerk of the district court until it is determined which party, the said Lehr and Martin or Ryan, is entitled to hold the property so levied upon in favor of Lehr by the constable, Martin; and when the court shall have made an order that one or the other of the parties, viz., Lehr or Ryan, is entitled to the proceeds of the sale of said property, in the event of the sale of the same before the matter is fully litigated, then the clerk shall pay the same according to the order of said court." The property was accordingly sold and the proceeds, amounting to $474.95, deposited with the clerk pursuant to the stipulation, and out of it Lehr was paid $27, his compensation for making the sale. At the May, 1898, term Donley was adjudged in default for want of answer; and, after a trial without a jury, the court entered a judgment upholding the lease as a valid lien by way of mortgage upon the property in controversy for the sum of $440 and interest, adjudging the execution levy to be void, as in violation of the injunction of which the judgment creditor and constable were found to have notice, and making the temporary injunction perpetual, and directing that the money, the proceeds of the sale of the property then in the hands of the clerk, be applied, first, to the payment of the costs of the suit; second, the payment of $27 compensation to Lehr for selling the property pursuant to the stipulation; and third, to the satisfaction of the plain-

tiff's lien; the surplus, if any, to be retained by the clerk subject to the further orders of the court.

The circumstances are such that it will be convenient to begin with the discussion of the contentions of the appellee, plaintiff below. He insists, first, that the above recited stipulation, providing that the property should be sold and the proceeds disposed of as the court should order, amounted to a release of errors and waiver of the right of appeal, and submitted the matter finally to the judgment of the trial court. There is no such expressed agreement in the instrument, and, in its absence, an intent by a litigant to bar himself of the right of access to the courts should only be made out by the strongest implication. Such an inference can not, in our opinion, be drawn from a stipulation requiring the money to remain in the hands of the clerk until it is determined which party is entitled to it, and expressly contemplating that the matters in controversy shall be "fully litigated." In our opinion, the stipulation contemplates a final determination of the suit after it has been fully litigated, which includes the right to litigate in this court if either party desires to do so.

The more important question is the right of the plaintiff to have his contract with Ryan enforced, and a lien in his favor established against the crop in question.

While, in general, a court of equity will not take upon itself to decree specific performance where chattel property alone is concerned, its jurisdiction to do so can not be doubted, and no good reason exists against the exercise of the jurisdiction in any case where compensation in damages would not furnish a complete and satisfactory remedy, or where, as in this case, a judgment for damages would be of no benefit because of the insolvency of the defendant.

Every contract, the subject of which is susceptible of substantial enjoyment, should be enforced, provided always the circumstances surrounding and connected with the contract bring it within the rules entitling the party to equitable relief. Waterman, Specific Performance, sec. 11.

But, further than this, the rule that a contract respecting

chattels will not ordinarily be specifically · enforced, does not apply to an agreement for a lien or security upon personal property, where there can be no remedy at law. Beach, Modern Equity Jurisprudence, sec. 598; Waterman, Specific Performance, sec. 20.

In *Triebert v. Burgess,* 11 Md. 452, it was held that a parol contract for a mortgage of personal property, based upon a valuable consideration, may be enforced in a court of equity, if the contract is not such as the statute of frauds requires to be in writing.

It is insisted, as we understand from the brief of the defendant, that the rule now firmly established in this state, that no valid lien by way of mortgage can be created on property not *in esse,* applies equally to an agreement to give a lien on property not *in esse,* by executing a mortgage on the same when it comes into existence. We do not think that this position can be sustained. It is evident that to support a present grant the thing granted or conveyed must have a present existence. If it has no existence, there is nothing for the grant to operate upon and in the eyes of the law it is a mere nullity. A chattel mortgage, therefore, which purports to cover property not in existence has nothing upon which to operate; and, the mortgage being an executed contract with nothing further to be done by either party, the rights of the parties are fixed and determined by the mortgage as made. If the property described therein had no existence, so that nothing was conveyed thereby, a court could not enlarge the contract as made, or amend it to include more than the parties had covered by their agreement.

· The case at bar is different; the contract is executory in its character; it is an agreement to give security at a future day, and the authorities are all agreed that such an agreement may be enforced. In *Hale v. Omaha Nat. Bank,* 49 N. Y. 626, a case where, as here, the lessees were insolvent, the court said:

"Had the lessor claimed a specific performance of the agreement, and the perfecting of a lien upon the furniture

as against the lessees while they remained in possession of the demised premises, and after the furniture had been placed in the hotel, no one would have questioned the right of the landlord to the security agreed upon, and no court exercising the ordinary jurisdiction of courts of equity would have hesitated to decree specific performance and compelled the execution of the proper instrument to give the lien."

The distinction between a mortgage actually executed, purporting to cover after acquired property, and an agreement to execute a mortgage thereon after the property had come into existence, was evidently in the mind of Judge HOLCOMB when he formulated the opinion in *Brown v. Neilson,* 61 Neb. 765. At page 768 he remarks:

"The stipulation does not comprehend, within its meaning, that the lessee will, after the property is acquired, execute a mortgage or other instrument incumbering the property for the benefit of the lessor. No original and independent contract creating a new lien can be inferred as the intention and contemplation of the parties, without doing violence to the language used. It does not purport to be an agreement to give in the future, a lien on the property then owned by the lessees on the leased premises; but, by its own terms and provisions, the instrument evinces an attempt to establish a lien in future on property at the time not *in esse.* It is a contract, or attempt at contract, for a sale and transfer by way of mortgage, and not a contract to give a mortgage."

It is further insisted that if the defendant's agreement to give security upon the crop had any force or effect, it could not be greater than that created by a chattel mortgage given on goods actually owned and in the possession of the mortgagor, and that such a mortgage is void as to creditors in the absence of the recording of the mortgage. This is true, unless the mortgagee takes possession of the mortgaged property before the right of the creditor to the property has accrued by his seizure of the same. *Meyer & Raapke v. Miller,* 51 Neb. 620. This requires us to de-

termine whether, by commencing this action to enforce the agreement made by Donley to give a mortgage on the crop, and for a foreclosure and sale of the same, the plaintiff, in a legal sense, took possession of the property or placed it within the possession of the court, which, in legal effect, would be equally effective.

It is a rule well known to the profession that where two courts have concurrent jurisdiction, that which first takes cognizance of the case has the right to retain it to the exclusion of the other; that where property is *in gremio legis*, if it be a court of rightful jurisdiction, no other court can interfere and wrest from it the jurisdiction first obtained; and that a sale under an order of one court, of property in the custody or possession of another, conveys no title. *Leigh v. Green*, 62 Neb. 344, and cases cited at page 354.

In the case now under consideration, the court was asked to establish a lien against the property, to foreclose the lien, and to order a sale of the property to satisfy the plaintiff's claim. The property being chattel in its nature, a sale thereof could only be made effective by delivering possession to the purchaser. The relief asked from the court could only be given by the court turning over to the purchaser at the sale physical possession of the goods. We think that, in cases of this character, to give the court exclusive jurisdiction of the property involved in the suit, a receiver need not be appointed or that any officer of the court should actually seize and hold the property. We believe and hold that, where the relief asked from the court requires it, if granted, to pass possession of the property to a purchaser at a sale which may be ordered, the bringing of the suit and the service of process places the property within the jurisdiction of the court so far as to render ineffective any sale of the same made by another court of concurrent jurisdiction in a suit subsequently commenced. *Adams v. Mercantile Trust Co.*, 66 Fed. 617, and note to same case 15 C. C. A. 6.

We recommend an affirmance of the decree appealed from.

ALBERT, C. concurs.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment hertofore rendered by this court be vacated and that the decree appealed from be

AFFIRMED.

HOLCOMB, J.

I concur in the judgment of affirmance only because it is held by a majority of the court in another opinion filed at this session (*Sporer v. McDermott, ante,* p. 533), that an agreement to give a mortgage on crops, not in existence at the time, may thereafter be specifically enforced.

SEDGWICK, J., not sitting.